IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



FILED
MAR 19 2019
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| JAMES E. BALL,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONAL OFFICER DAN JOHNSON, et al.,<br><br>Defendants. | CV 17–33–H–DLC–JTJ<br><br>ORDER |

United States Magistrate Judge John T. Johnston entered his Order and Findings and Recommendations in this case on December 10, 2018, recommending that summary judgment be entered in favor of Defendants Kerrie Ross, Dan Johnson, and Crystal Thompson but denied in regard to Defendant Anthony Holland. (Doc. 42 at 29–30.) Judge Johnston also recommended that Plaintiff James E. Ball's two motions, construed as requests for injunctive relief, be denied. (*Id.* at 30.) This Court has received objections from both Ball and Holland and, accordingly, will review de novo each finding and recommendation to which proper objection has been made. 28 U.S.C. § 636(b)(1)(C). Absent objection, this Court reviews findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v. Arn*, 474

U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted). "A party makes a proper objection by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010) (citation omitted).

Ball, a prisoner proceeding pro se, claims that Ross encouraged another inmate to assault him and denied him equal protection of the law, that Thompson was deliberately indifferent to his serious medical needs, and that Johnson, Ross, and Holland retaliated against him for his use of the prison grievance system and for previous litigation. (Doc. 42 at 1.) Judge Johnston correctly determined that all of Ball's claims, except for his equal protection claim, are subject to the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). (*Id.* at 9–11.) Judge Johnston then determined that it was undisputed that Ball had failed to meet the exhaustion requirement in regard to his claims against Ross, Thompson, and Johnson and that summary judgment was appropriate on those claims. (*Id.* at 14–24.) In regard to Ball's claim against Holland, Judge Johnston found an issue

of material fact existed as to whether Ball had met the exhaustion requirement that precluded summary judgment on that claim. (*Id.* at 11–14.) Judge Johnston also determined that Ross was entitled to summary judgment on Ball's equal protection claim because: (1) he had not established that Ross was responsible for the harm alleged, (2) Ball was not a member of a protected class, and (3) there was a rational basis for why he was treated differently. (*Id.* at 25–28.) Lastly, Judge Johnston found that Ball's requests for injunctive relief should be denied because they sought relief against individuals who are not parties to this litigation. (*Id.* at 28–29.)

Ball objects to Judge Johnston's findings and recommendations on three grounds. First, Ball object to Judge Johnston's conclusion that Ball had failed to meet the exhaustion requirement of the PLRA. (Doc. 44 at 1–14.) Ball's objection in this regard is insufficient. Ball relies upon unsubstantiated statements that he did everything in his power to exhaust the prison's administrative remedies but that Defendants have maliciously prevented him from proving this fact. Ball's factual allegations in this regard are either rehashed assertions or entirely new allegations lacking any explanation for why they were not presented to Judge Johnston before his recommendation, despite the fact that they stem from knowledge in Ball's possession at that time. Further, Ball's allegations are both unsubstantiated and

improbable, particularly in light of the undisputed fact that a number of Ball's other grievances were processed during the timeframe in question. (Doc. 42 at 23.) Consequently, this Court will not consider them. *See United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000). Ball's generalized objections to Judge Johnston's findings and recommendations fail to trigger de novo review and this Court finds no clear error in Judge Johnston's conclusion that Defendant's Johnson and Thompson are entitled to summary judgment because Ball failed to exhaust his administrative remedies under the PLRA.

Second, Ball objects to Judge Johnston's finding that he is not a member of a protected class for purposes of his equal protection claim against Defendant Ross. However, Ball's objection fails to address or provide information to dispute Judge Johnston's findings that Ball failed to allege facts showing that Ross was responsible for the harm alleged and that there was a rational basis for why Ball had been treated differently. (Doc. 44 at 14–19.) Either finding, standing alone, defeats Ball's equal protection claim and warrants adoption of Judge Johnston's recommendation.[1] Because Ball has failed to address these findings, Ball has failed to properly object by failing to show reasons for reaching a contrary result.

---

[1] While Ball does address Judge Johnston's finding that he is not a member of a protected class, his argument is both unpersuasive and irrelevant in light of the above.

The Court finds no clear error in Judge Johnston's conclusion that Ross is entitled to summary judgment on Ball's equal protection claim.

Lastly, Ball objects to Judge Johnston's recommendation that Ball's requests for intervention should be denied. Ball asserts that this Court does have jurisdiction over the staff of the Lewistown Infirmary because they are acting on behalf of the named Defendants. (Doc. 44 at 19–21.) However, Ball has offered no more than his unsupported assertions that this is the case. This Court does not have jurisdiction to issue an order against an individual who is not a party to this case. *Zepeda v. United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985.) There is no error in Judge Johnston's recommendation to deny Ball's requests for intervention.

The Court now turns to Defendant Holland's objection. Holland claims that Judge Johnston erred in finding that an issue of material fact existed as to whether Ball had exhausted his administrative remedies in relation to his retaliation claim against Holland. Holland asserts that Judge Johnston made this erroneous finding after incorrectly determining that Ball could meet the exhaustion requirement by advancing his administrative claim through *either* the prison's grievance program or its disciplinary system. Holland asserts that Judge Johnston's determination of this matter is erroneous because the PLRA requires prisoners to exhaust *all*

administrative remedies, so the existence of an unexhausted remedy results in a failure of a condition precedent to Ball's ability to litigate this claim. (Doc. 43 at 1–2.)

The Prison Litigation Reform Act of 1996 requires that inmates "exhaust their administrative remedies prior to bringing a court action to redress prison conditions or occurrences." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). This requirement is mandatory and requires that "*all* available remedies must be exhausted." *Id.* (emphasis added)(internal quotation marks, citation, and alterations omitted). These remedies "need not meet federal standards, nor must they be plain, speedy, and effective." *Id.* (internal quotation marks and citation omitted). Indeed, the applicable procedure the prisoner must exhaust is "defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The PLRA "requires compliance with both procedural and substantive requirements set forth by prison grievance processes in order to ensure that the prison receives the 'opportunity to correct its own mistakes . . . before it is haled into federal court.'" *Manley*, 847 F.3d at 711 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "A grievance suffices to exhaust a claim if it puts the prison on

administrative remedies, so the existence of an unexhausted remedy results in a failure of a condition precedent to Ball's ability to litigate this claim. (Doc. 43 at 1–2.)

The Prison Litigation Reform Act of 1996 requires that inmates "exhaust their administrative remedies prior to bringing a court action to redress prison conditions or occurrences." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). This requirement is mandatory and requires that "*all* available remedies must be exhausted." *Id.* (emphasis added)(internal quotation marks, citation, and alterations omitted). These remedies "need not meet federal standards, nor must they be plain, speedy, and effective." *Id.* (internal quotation marks and citation omitted). Indeed, the applicable procedure the prisoner must exhaust is "defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The PLRA "requires compliance with both procedural and substantive requirements set forth by prison grievance processes in order to ensure that the prison receives the 'opportunity to correct its own mistakes . . . before it is haled into federal court.'" *Manley*, 847 F.3d at 711 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "A grievance suffices to exhaust a claim if it puts the prison on

adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010).

The burden falls upon the Defendant to both raise and show a failure to exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)). Once raised, the Defendant can show a failure to exhaust by proving that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If this is shown, the burden shifts to the prisoner to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Here, Ball claims that Defendant Holland retaliated against him for filing prison grievances by writing him up for "cheeking" medications (failing to ingest a given medication). (Doc. 42 at 11–12.) In evidence are a June 16, 2016 "Disciplinary Appeal," a July 8, 2016 "Disciplinary Infraction Report," a July 10, 2016 "Inmate/Offender Informal Resolution Form," and a July 15, 2016 "Disciplinary Appeal." (Docs. 2-3 at 3, 7; 25-8 at 1; 25-18 at 1.) In the June 16, 2016 Disciplinary Appeal Ball stated:

> When I took my medication I did swallow it but was sick all day and coughed it up in the lobby, there is no evidence to show I cheaked it,

-7-

and I didn't. At the time the medication line and the Sgt's office was packed with inmates, and the other officers were busy so I could not turn it in. I did show UM Kremer I threw the pill in the trash when he came into the unit. I should have not been found guilty of a major . . . I feel that at the most I should not have been found guilty of anything or make it a minor write-up. The $10.00 fine is excessive. I should not be fined punished for being sick to my stomach and throw-up my pill. Also the 10 day cell restriction is excessive as for 90 days. I did not cheak my med, the officer checked my mouth at pill pass. Now I have lost my unit worker job because of this write-up.

(Doc. 2-3 at 3.) While this complaint concerns only his medical condition and his belief that the discipline was disproportionate, his July 15, 2016 Disciplinary Appeal raises the issue of a retaliatory purpose:

> The Officer Holland's write-up is false, again due to my hydal hernia I coughed up my meds, I have medical documentation in my medical file that proves I have a hydal hernia and cough things up. This officer is out to get me because of my legal filings. . . .

(*Id.* at 7.)

Nonetheless, it is apparent that the two Disciplinary Appeal forms stem from the appeals of two different incidents where Ball was written up for cheeking medication, one on June 16, 2016, and another on July 8, 2016. While the second incident clearly involves Defendant Holland, there is no indication in the record that Holland wrote up Ball for the first incident.[2] As determined by Judge Johnston, in regards to the June 16, 2016 Disciplinary Appeal, questions remain as

---

[2] Although Defendant Holland urges this Court to exercise its discretion to consider additional evidence presented along with his objection to support his contention that Ball has failed to exhaust, the Court does not find this evidence necessary and will refrain from so doing.

-8-

to whether Holland issued the write-up and whether this incident is the basis for Ball's retaliation claim against Holland. However, in light of these questions, this Court cannot agree with Judge Johnston that the June 16, 2016 Disciplinary Appeal "arguably gave the prison adequate notice of the harm being grieved." (Doc. 42 at 13.) Ball failed to indicate that he was complaining about retaliation at all, let alone that Holland was the officer he claimed was retaliating against him. (*See* Doc. 2-3 at 3.) The purpose of the PLRA of giving prisons an internal opportunity to correct a mistake before a prisoner can proceed with litigation cannot be served if the prison is not given "adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824. Complaining about the propriety of punishing the manifestation of a medical issue is categorically different than complaining about being punished by an officer in retaliation for filing grievances.

Turning to the July 8, 2016 incident, there is evidence showing that Ball participated in the prison grievance program by filing the July 10, 2016 Inmate/Offender Informal Resolution Form, and that Ball participated in the prison's disciplinary process by filling out the July 15, 2016 Disciplinary Appeal. (Docs. 2-3 at 7; 25-8 at 1.) The Court is satisfied that both forms provide sufficient detail to put the prison on notice of Ball's claim that Defendant Holland was

to whether Holland issued the write-up and whether this incident is the basis for Ball's retaliation claim against Holland. However, in light of these questions, this Court cannot agree with Judge Johnston that the June 16, 2016 Disciplinary Appeal "arguably gave the prison adequate notice of the harm being grieved." (Doc. 42 at 13.) Ball failed to indicate that he was complaining about retaliation at all, let alone that Holland was the officer he claimed was retaliating against him. (*See* Doc. 2-3 at 3.) The purpose of the PLRA of giving prisons an internal opportunity to correct a mistake before a prisoner can proceed with litigation cannot be served if the prison is not given "adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824. Complaining about the propriety of punishing the manifestation of a medical issue is categorically different than complaining about being punished by an officer in retaliation for filing grievances.

Turning to the July 8, 2016 incident, there is evidence showing that Ball participated in the prison grievance program by filing the July 10, 2016 Inmate/Offender Informal Resolution Form, and that Ball participated in the prison's disciplinary process by filling out the July 15, 2016 Disciplinary Appeal. (Docs. 2-3 at 7; 25-8 at 1.) The Court is satisfied that both forms provide sufficient detail to put the prison on notice of Ball's claim that Defendant Holland was

retaliating against him. However, whether these forms satisfy the exhaustion requirement is less clear.

The July 10, 2016 Inmate/Offender Informal Resolution Form merely shows that Ball took the first step of the prison grievance program and that his grievance was denied. (Doc. 25-8 at 1.) But the form does not show that Ball exhausted this administrative remedy by appealing this denial. (*Id.*) Indeed, Defendants argue that Ball did not appeal the denial and the record supports this conclusion. (Docs. 42 at 11; 43 at 12–13.) The July 15, 2016 Disciplinary Appeal, on the other hand, does not provide any indication that it was received by Defendants. (*See* Doc. 2-3 at 7.) And Holland claims that it was not received by Defendants because Ball failed to file it. (Doc. 42 at 11.) Consequently, it is unclear whether Ball actually filed his Disciplinary Appeal.

While Judge Johnston found that this incomplete evidence presented a genuine issue of material fact as to whether Ball had exhausted his administrative remedies, this Court does not agree. Again, as noted by Holland in his objection, the PLRA requires that prisoners exhaust *all* administrative remedies. *Manley*, 847 F.3d at 711. Here, Ball did not exhaust the administrative remedy most attuned to redressing a claim that an officer is retaliating against an inmate, the prison grievance program. Hypothetically, if Ball were to succeed in his July 15, 2016

Disciplinary Appeal, the result would be that the discipline would not be carried out. On the other hand, if Ball had successfully appealed the resolution of his July 10, 2016 Inmate/Offender Informal Resolution Form, the result would be the investigation and discipline of Holland as well as amelioration of past retaliation and safeguards against further retaliation. (Doc. 43 at 10.) Moreover, this is not a situation where Ball believed the disciplinary appeal provided the only available remedy such that Ball could be excused from failing to exhaust an available remedy, *see Fuqua v. Ryan*, 890 F.3d 838, 849–50 (9th Cir. 2018), Ball *filed* a grievance form (Doc. 25-8 at 1), he just didn't appeal its denial. Consequently, the fact that it is unclear whether Ball filed his July 15, 2016 Disciplinary Appeal is irrelevant in light of the fact that Ball did not exhaust an available remedy by appealing the denial of his July 10, 2016 Inmate/Offender Informal Resolution Form. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.").

Having determined that Holland has carried his burden of showing that an administrative remedy existed and that Ball failed to exhaust that remedy, the burden falls upon Ball to show that "there is something in his particular case that made the existing and generally available administrative remedies effectively

unavailable to him." *Albino*, 747 F.3d at 1172.  Here, Ball has failed to carry this burden.  His unsubstantiated assertions are all undercut by the fact that Ball exhausted the prison's disciplinary process as well as its grievance program routinely during the timeframe in question.  In short, Ball was a prolific participant in the prison's administrative remedies and the prison routinely addressed his complaints.  This Court is satisfied that no question of material fact exists as to whether Ball failed to exhaust available administrative remedies in regard to his retaliation claim against Defendant Holland.  Accordingly,

IT IS ORDERED that Judge Johnston's Order and Findings and Recommendations (Doc. 42) are ADOPTED IN PART AND REJECTED IN PART:

1. Defendant Ross' Motion for Summary Judgment (Doc. 26) is GRANTED.
2. Defendants Johnson, Thompson, and Holland's Motion for Summary Judgment (Doc. 29) is GRANTED.
3. Ball's Motions for Court Intervention (Docs. 36; 41) are DENIED.

IT IS FURTHER ORDERED that the Clerk is directed to enter judgment in favor of Defendants and against Plaintiff in this case.

DATED this 19th day of March, 2019.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court